**DAVIS WRIGHT TREMAINE LLP**
865 S. FIGUEROA ST.
SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
TELEPHONE (213) 633-6800
FAX (213) 633-6899

ALONZO WICKERS IV (State Bar No. 169454)
  alonzowickers@dwt.com
JONATHAN L. SEGAL (State Bar No. 264238)
  jonathansegal@dwt.com

Attorneys for Defendants
VIACOM INC., VIACOM
INTERNATIONAL INC., and NEW
POP CULTURE PRODUCTIONS INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAYCEON TERRELL TAYLOR, an individual,<br><br>                    Plaintiff,<br><br>        vs.<br><br>VIACOM, INC., VIACOM INTERNATIONAL, INC., and NEW POP CULTURE PRODUCTIONS, INC.<br><br>                    Defendants. | Case No. 2:17-cv-03247 DMG (AFMx)<br><br>**DEFENDANTS VIACOM INC., VIACOM INTERNATIONAL INC. AND POP CULTURE PRODUCTIONS INC.'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT; DECLARATIONS OF TEMPLE WILLIAMS AND JONATHAN L. SEGAL, EXHIBITS A-PP**<br><br>**[Request For Judicial Notice Filed Concurrently; [Proposed] Order Lodged Concurrently]**<br><br>Date: July 28, 2017<br>Courtroom: 8C<br>Time: 9:30 a.m.<br><br>Complaint Served: May 5, 2017 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 28, 2017, at 9:30 a.m. or as soon thereafter as the matter may be heard, in Courtroom 8C of the United States District Court for the Central District of California, located at 50 West 1st Street, Los Angeles, California, defendants Viacom Inc., Viacom International Inc., and New Pop Culture Productions Inc. (collectively "Viacom") will and hereby do move this Court, pursuant to California Code of Civil Procedure § 425.16, for an order striking each cause of action in plaintiff Jayceon Taylor's complaint.

Because Taylor's causes of action arise from Viacom's exercise of its free-speech rights about an issue of public interest – namely, the casting of the television series *She's Got Game* – they are subject to a special motion to strike under Section 425.16.  Thus, the burden shifts to Plaintiff to establish a probability that he will prevail on his claims.  CCP § 425.16(b)(1).  He cannot meet that burden for each of the following reasons:

- Each of Taylor's claims fails because Viacom was not the proximate cause of the damages he allegedly suffered:  a $7.1 million civil judgment entered against him for allegedly battering another participant in the program, Priscilla Rainey.  *See Rainey v. Taylor*, Case No. 15-c-6844 (N.D. Ill.); Ex. F.

- His claims also are barred because he expressly released Viacom for liability for claims arising from the program, specifically acknowledged that his participation may "lead to emotional strains and pressures," and unequivocally agreed to "accept any and all risks of participating in the Project."

- Taylor's claim for negligent misrepresentation independently is barred because:
    - he failed to plead the elements of that claim with the requisite degree of specificity, as required by Fed. R. Civ. P. 9(b); and

---

1

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

     o     his reliance on any alleged misrepresentation by Viacom was unreasonable given his acknowledgement and assumption of the risk of participating in the program.

- Taylor's claim for negligent infliction of emotional distress fails because that cause of action is not cognizable when, as here, there is no allegation of physical harm, only emotional or financial harm.

- His claim for breach of fiduciary duty fails because there is no fiduciary relationship between him and Viacom.[1]

This Motion is based on this Notice; on the attached Memorandum of Points and Authorities; on the Declarations of Temple Williams and Jonathan L. Segal with Exhibits A through PP; on the concurrently filed Request for Judicial Notice and all matters of which this Court may take judicial notice; on all pleadings, files, and records in this action; and on such other argument as may be received by this Court at the hearing on this Motion.

For these reasons, Viacom respectfully requests that the Court grant this Motion and enter judgment in favor of Viacom and against Taylor.

DATED: June 26, 2017

DAVIS WRIGHT TREMAINE LLP
ALONZO WICKERS IV
JONATHAN L. SEGAL

By: /s/ Alonzo Wickers IV

Attorneys for Defendants
VIACOM INC., VIACOM INTERNATIONAL INC., and NEW POP CULTURE PRODUCTIONS INC.

---

[1] To comply with Local Rule 7-3, counsel for the parties discussed the merits of Viacom's anti-SLAPP motion by telephone on June 14, 2017, but were unable to resolve the dispute. Segal Decl. ¶ 2. Plaintiff's counsel stated that he would oppose the motion. *Id.* Viacom set this motion to be heard on the first available hearing date after filing; no hearing date was available within 30 days of the filing date. *Id.*

SPECIAL MOTION TO STRIKE
4817-4804-4106v.4 0098567-000013

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF CONTENTS

Page

I.    SUMMARY OF ARGUMENT .................................................................. 1

II.   FACTUAL BACKGROUND .................................................................. 3

III.  TAYLOR'S CLAIMS ARE SUBJECT TO AN ANTI-SLAPP
      MOTION ................................................................................................ 6

      A.   Taylor's Claims Arise From Viacom's Conduct in Furtherance
           of Its First Amendment Rights. ............................................... 7

      B.   Viacom's Conduct Relates to a Matter of Public Interest. ......... 8

IV.   TAYLOR CANNOT SHOW A PROBABILITY OF PREVAILING
      ON HIS CLAIMS. ............................................................................... 11

      A.   Viacom Did Not Proximately Cause the Damages Alleged in
           Taylor's Complaint ................................................................. 11

      B.   Taylor's Claims Are Barred by His Release, Covenant Not to
           Sue, and Assumption of Risk Related to the Program. ............ 14

      C.   Taylor's Claim for Negligent Misrepresentation Fails For Two
           Additional Reasons ................................................................. 17

      D.   Taylor's Claim for Negligent Infliction of Emotional Distress
           Fails Because No Physical Injury Is Alleged. ......................... 18

      E.   Taylor's Claim for Breach of Fiduciary Duty Is Barred Because
           Viacom Did Not Owe Him a Fiduciary Duty. ......................... 19

V.    CONCLUSION .................................................................................... 19

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arenas v. Shed Media,*
   881 F. Supp. 2d 1181 (C.D. Cal. 2011) ............................................................. 9, 10

*Beckham v. Bauer Publishing,*
   No. CV 10-7980-R, 2011 U.S. Dist. LEXIS 32269 (C.D. Cal. Mar.
   17, 2011) ......................................................................................................... 9, 10

*Benedek v. PLC Santa Monica,*
   104 Cal. App. 4th 1351 (2002) ............................................................................. 14

*Bradbury v. Superior Court,*
   49 Cal. App. 4th 1108 (1996) ............................................................................... 11

*Brandwein v. Butler,*
   218 Cal. App. 4th 1485 (2013) ............................................................................. 11

*Brewer v. Teano,*
   40 Cal. App. 4th 1024 (1995) ......................................................................... 12, 13

*Brodeur v. Atlas Entertainment,*
   248 Cal. App. 4th 665 (2016) ................................................................................. 9

*Christakis v. Mark Burnett Prods.,*
   No. 08-cv-6864, 2009 U.S. Dist. LEXIS 60751 (C.D. Cal. Apr. 27,
   2009) ..................................................................................................................... 14

*Claybrooks v. ABC,*
   898 F. Supp. 2d 986 (M.D. Tenn. 2012) ................................................................. 8

*Coates v. Newhall Land & Farming,*
   191 Cal. App. 3d 1 (1987) .............................................................................. 14, 15

*Damon v. Ocean Hills Journalism Club,*
   85 Cal. App. 4th 468 (2000) .................................................................................... 9

ii

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Daniel v. Wayans,*
   8 Cal. App. 5th 367 (2017), review granted by *Daniel v. Wayans,*
   2017 Cal. LEXIS 3324 (May 10, 2017)..................................................................... 7

*Doe v. Gangland Prods,*
   730 F.3d 946 (9th Cir. 2013) .......................................................................... 1, 7

*DuPont Merck Pharm. v. Superior Court,*
   78 Cal. App. 4th 562 (2000) ................................................................................. 11

*Ebeid v. Lungwitz,*
   616 F.3d 993 (9th Cir. 2010) ............................................................................... 17

*Edwards v. Comstock Inc.,*
   205 Cal. App. 3d 1164 (1988) ............................................................................. 17

*Evan F. v. Hughson United Methodist Church,*
   8 Cal. App. 4th 828 (1992) ......................................................................2, 11, 12

*Gutierrez v. Girardi*
   (2011) ............................................................................................................... 11

*Hilton v. Hallmark Cards,*
   599 F.3d 894 (2010)............................................................................................... 9

*Hunter v. CBS Broadcasting,*
   221 Cal. App. 4th 1510 (2013) ...................................................................... 1, 7, 8

*Hutchins v. Nationstar Mortgage,*
   2017 U.S. Dist. LEXIS 73026 (N.D. Cal. May 12, 2017).................................... 17

*Jefferson v. Cal. Dep't of Youth Auth.,*
   28 Cal. 4th 299 (2002) ........................................................................................ 17

*Lieberman v. KCOP Television,*
   110 Cal. App. 4th 156 (2003) ............................................................................... 8

*Ludwig v. Superior Court,*
   37 Cal. App. 4th 8 (1995) ..................................................................................... 1

*Lyle v. Warner Bros. Television Prods.,*
   38 Cal. 4th 264 (2006) (Chin, J., concurring)....................................................... 8

iii

SPECIAL MOTION TO STRIKE

4817-4804-4106v.4 0098567-000013

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*M.B. v. City of San Diego*,
   233 Cal. App. 3d 699 (1991) ............................................................... 11

*Madison v. Superior Court*,
   203 Cal. App. 3d 589 (1988) ............................................................... 15

*Marder v. Lopez*,
   450 F.3d 445 (9th Cir. 2006) ............................................................... 16

*Navellier v. Sletten*,
   29 Cal. 4th 82 (2002) ...................................................................... 6, 7

*Nygård v. Uusi-Kerttula*,
   159 Cal. App. 4th 1027 (2008) .............................................................. 9

*Oushana v. Lowe's Home Ctrs.*,
   No. 1:16-cv-01782, 2017 U.S. Dist. LEXIS 86042 (E.D. Cal. June 5,
   2017) .......................................................................................... 17

*Phillips v. TLC Plumbing*,
   172 Cal. App. 4th 1133 (2009) ......................................................... 13, 14

*Potter v. Firestone Tire & Rubber Co.*,
   6 Cal. 4th 965 (1993) ...................................................................... 18

*Sanchez v. Bally's Total Fitness*,
   68 Cal. App. 4th 62 (1998) ................................................................ 15

*Seelig v. Infinity Broadcasting*,
   97 Cal. App. 4th 798 (2002) ........................................................... 7, 8, 9

*Spinello v. Amblin Entertainment*,
   29 Cal. App. 4th 1390 (1994) .............................................................. 14

*Tamkin v. CBS Broadcasting*,
   193 Cal. App. 4th 133 (2011) ....................................................... 1, 7, 8, 9

*Tarpy v. County of San Diego*,
   110 Cal. App. 4th 267 (2003) .............................................................. 17

*Traditional Cat Ass'n v. Gilbreath*,
   118 Cal. App. 3d 392 (2004) ............................................................... 9

iv

SPECIAL MOTION TO STRIKE

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

4817-4804-4106v.4 0098567-000013

*Tribeca Companies, LLC v. First American Title Ins. Co.*,
    239 Cal. App. 4th 1088 (2015) ............................................................ 11

*Williams v. Wraxall*,
    33 Cal. App. 4th 120 (1995) .............................................................. 13

*Wolf v. Superior Court*,
    107 Cal. App. 4th 25 (2003) .............................................................. 19

**Statutes**

California Code of Civil Procedure
    § 425.16.............................................................................*passim*
    § 425.16(b) ............................................................................... 1
    § 425.16(b)(1) ........................................................................ 11
    § 425.16(e) .............................................................................. 6
    § 425.16(e)(4)....................................................................... 1, 6

**Rules**

Federal Rules of Civil Procedure 9(b) ...................................... 17

**Constitutional Provisions**

First Amendment................................................................ 7, 8

**Other Authorities**

9 Witkin Sum. Cal. Law Torts § 1292 ...................................... 15

SPECIAL MOTION TO STRIKE

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

4817-4804-4106v.4 0098567-000013

# I.    SUMMARY OF ARGUMENT

Plaintiff Jayceon "The Game" Taylor is a well-known rapper and star of the reality television program *She's Got Game* (the "Program"), which aired in 2015 on VH1, a cable network operated by Viacom.  Priscilla Rainey, another cast member from the Program, claimed that during the production of the Program in May 2015, Taylor sexually assaulted her in front of a crowd at a Chicago-area nightclub.  Ex. C ¶ 9.  Rainey sued Taylor for alleged sexual battery, and after a trial (at which Taylor did not appear), the jury returned a verdict for Rainey and awarded her $7.1 million.  Remarkably, Taylor now complains that he was "aggrieved and harmed by the announcement of the verdict," and seeks to hold Viacom liable for the consequences of *his* alleged actions, simply because Rainey appeared as a cast member on the Program, which aired on a Viacom network.  Compl. ¶¶ 52, 58.  But controlling authority – and common sense – dictate that Taylor cannot shift responsibility for his alleged misconduct to Viacom.

California's anti-SLAPP statute provides a mechanism for the "fast and inexpensive … dismissal" of meritless claims like Taylor's.  *Ludwig v. Superior Court*, 37 Cal. App. 4th 8, 16 (1995); C.C.P. § 425.16.  Under the statute, any cause of action that arises from a defendant's conduct in furtherance of its free-speech rights about a matter of public interest must be stricken at the outset, unless the plaintiff presents admissible evidence demonstrating a "probability" that he will prevail on the claim at trial.  C.C.P. § 425.16(b), (e)(4).  Each of Taylor's claims arises from Viacom's alleged approval of Rainey's casting on a popular television series.  Compl. ¶¶ 56, 64, 73, 89.  For purposes of Section 425.16, courts consistently have held that casting and other pre-production and production activities for television programs qualify as acts in furtherance of free speech in connection with an issue of public interest.  *See, e.g.*, *Tamkin v. CBS Broadcasting*, 193 Cal. App. 4th 133, 144 (2011); *Hunter v. CBS Broadcasting*, 221 Cal. App. 4th 1510, 1521 (2013); *Doe v. Gangland Prods*, 730 F.3d 946, 953 (9th Cir. 2013).

1

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

The burden thus shifts to Taylor to present evidence demonstrating a probability that he will prevail on each of his claims. He cannot do so. As a threshold matter, he cannot come close to showing that Viacom proximately caused his alleged damages. Proximate cause is "associated with the nature and degree of the connection in fact between the defendant's acts and the events of which the plaintiff complains." *Evan F. v. Hughson United Methodist Church*, 8 Cal. App. 4th 828, 835 (1992). It is absurd for Taylor to claim that Viacom's alleged approval of Rainey being cast on the Program is the proximate cause of the jury's verdict against him for allegedly sexually assaulting her. The superseding causes of his purported damages include, most obviously, his alleged sexual battery of Rainey, as well as her filing of a civil lawsuit against him, his failure to appear for trial, and the jury's decision to credit her testimony and award her $7.1 million. Each is an independent event that breaks any purported chain of causation.

Taylor's claims also are barred by his express assumption of the risk of participating in the Program, and his broad release of claims against Viacom. In the agreement that he signed in connection with the Program (the "Agreement"), Taylor explicitly acknowledged that his participation in the Program may cause emotional strains upon him, and agreed "to accept any and all risks of participating in the Project." Ex. A, Deal Memorandum at ¶ 18. He separately released Viacom from "any and all manner of liabilities, claims and demands of any kind … which arise out of or relate to the use of the Footage in connection with the production … of the Series[.]" *Id.* ¶ 26. Having done so, he cannot now sue Viacom for any such alleged harms related to the Program.

In addition to these fatal flaws, his claims suffer from other defects. He has not pleaded the negligent-misrepresentation claim with the requisite degree of specificity, and cannot demonstrate that he reasonably relied on any alleged misrepresentation. Nor can he show a probability of prevailing on his negligent-infliction-of-emotional-distress claim because he has not even alleged (and cannot

2

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

substantiate) that he suffered a physical injury or the threat of physical injury as a result of Viacom's alleged actions.  Finally, his breach-of-fiduciary-duty claim should be stricken because no fiduciary relationship existed between Viacom and Taylor; to the contrary, the Agreement specifically disclaims any such relationship.

For each of these reasons, Viacom respectfully requests that the Court grant this motion and strike the complaint in its entirety.

## II.     FACTUAL BACKGROUND

Taylor (better known by his stage name "The Game") has been a fixture on Viacom's VH1 cable television network since 2012, when the network aired the first of three seasons of *Marrying the Game*, a series that featured Taylor and his now-former fiancée Tiffney Cambridge.  Ex. G.  That series followed Taylor and Cambridge from wedding preparations through the dissolution of their relationship and their struggles to share custody of their children.  *Id.*  Over 22 episodes, the series familiarized audiences with Taylor's family dynamics and relationship issues.

In 2015, the same production company that made *Marrying the Game*, 51 Minds Entertainment, developed the concept for a new program featuring Taylor: *She's Got Game*, a reality dating show where female contestants compete for Taylor's affections:

> At the outset of the series, 10 of The Game's celebrity friends will be tapped as matchmakers.  Each of these celebs (men and women), will put forward who they believe to be his perfect girl. … With his future in mind and each celeb's pride on the line, you'd best believe that the stakes are high.
>
> Throughout the series, The Game and the girls will travel in style from LA to Miami and everything in between via private jet, tour bus, boat, and of course - luxury cars.  In each city they'll get to know The Game better by going on extraordinary dates, seeing the city, and making connections with him.  The girls will learn to live life on the road to see what his life is really like as The Game performs and makes appearances in cities all across America.  In every city, the party ends for one of our girls who is sent packing. In the end, only one woman will be able to say SHE'S GOT GAME.

3

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Ex. H.   In connection with his participation in the Program, Taylor (through his loan-out corporation) signed an agreement that included a broad release and covenant not to sue (Ex. A, Deal Memorandum at ¶ 26) and an assumption of the risk of harms resulting from the Program (*id.* ¶ 18).

One of the women who appeared on the program was Priscilla Rainey. Compl. ¶ 11.   As Rainey detailed in her complaint and her trial testimony, the production set out to film her with Taylor in the Chicago area in late May 2015. Ex. C ¶ 8.   Rainey testified that the pair went to a Chicago-area nightclub called Adrianna's Sportsbar off camera.  *Id.* ¶ 9; Ex. B at 206:12-207:1.   She alleged that "[w]hile at Adrianna's Sportsbar, [Taylor] was out of control, highly intoxicated on alcohol and drugs (which was typical), and sexually assaulted [Rainey] on several occasions that night.   This included him forcefully reaching his hand inside her dress to rub her bare vagina and buttocks."   Ex. C ¶ 9.   *See also* Ex. B at 211:3-213:8. Taylor also allegedly forcibly exposed Rainey's buttocks and genitals to other guests at the club. Ex. B at 212:1-8.   Two days after the alleged assault, Rainey confronted Taylor about it on tape.   Ex. E at 9.   Instead of denying that the assault occurred, Taylor allegedly "tried to silence [Rainey] as she detailed exactly what he had done to her two nights earlier.   Then [Taylor] got angry and threatened Rainey for her exposing him for sexually assaulting her."   Ex. E at 9.   *See also* Ex. B at 224:3-225:15; 226:22-227:11.

On August 5, 2015, Rainey filed a lawsuit against Taylor in federal district court in Chicago, alleging one count of battery.  Ex. C.   Rainey was granted entry of default on February 1, 2016.  Ex. D, Dkt. No. 24.  After Taylor successfully set aside the default, the case went to trial on November 14, 2016.  *See generally* Ex. B. Throughout the trial, Taylor's counsel sought a number of continuances after his client failed to appear, purportedly due to emergency dental work.  Ex. B at 90:9-98:18; 177:2-181:6; 304:3-304:11; 345:8-346:10; 500:7-501:24; 560:10-561:21.  The

4

4817-4804-4106v.4 0098567-000013

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Court denied the continuances, finding that they were part of a pattern of delay and obstruction:

> THE COURT: … I strongly suspect, and from what's in front of me, I believe that he scheduled his surgery intentionally in order to avoid having to come to trial. He evaded service for months. He hired one lawyer to handle a $10 million case. He sought a continuance. He's done everything possible to delay this day, and this is just the latest episode of his efforts.
>
> And again, I'm not directing this at you, Mr. Williams. I'm directing this at your very difficult client, Mr. Taylor.

Ex. B at 98:9-19.  The district court also found that just hours before the "emergency" surgery, Taylor was out until 2 a.m. partying at a nightclub even though the surgery was already scheduled.  *Id.* at 345:8-346:10.  In fact, the court found that Taylor's absence was a "really, really poor ruse and a really, really transparent ruse, but … a ruse nonetheless."  *Id.* at 501:20-22.

The court also criticized the presentation of the defense, stating that Taylor's counsel was overmatched:

> I mean, maybe the answer is you're just handling this case alone and you're doing the best you can, and that may be true. And I've already talked about this. But it's Mr. Taylor's decision to have you handle this case alone; and the fact that as talented as you are, the case may have been understaffed and you couldn't do things as quickly as you wanted to, that's on you or that's on Mr. Taylor, and that's not on the plaintiff.

Ex. B at 60:13-20.  The court noted that Taylor's counsel's cross-examination was taking longer than it had to, because of counsel's "disorganization and the delays that result from the disorganization," and his strategies on cross-examination.  *Id.* at 556:16-20.  The judge reprimanded Mr. Taylor's counsel:

> And you -- 90 percent of the time, you end up getting creamed by her, when you talk about the panties and you talk about muffin top. I mean, it's just irrelevant, and you just get destroyed when you do that. So, for the sake of the jury and for the sake of yourself, just focus on the important stuff and don't chase Ms. Rainey down any rabbit holes.

5

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Ex. B at 556:21-557:1.  Finally, faced with defense questioning that seemed calculated to evade the court's previous evidentiary rulings, the court threatened: "I'm not going to call a mistrial.  I'm just going to default the defendant, and we'll just go to a damages trial.  So, that's what's going to happen."  Ex. B at 538:15-18. Although the court did not do so, the jury eventually reached a verdict after a three-day trial, and entered judgment for Rainey in the amount of $7.1 million.  Ex. F.

Six months after the judgment, Taylor filed this lawsuit, alleging claims against Viacom for negligence, negligent misrepresentation, negligent infliction of emotional distress, and breach of fiduciary duty.  The gravamen of his claims is the allegation that Viacom negligently approved Rainey as a cast member.  Compl. ¶¶ 17-38, 56, 64, 73, 89.  While his complaint alleges several instances where Rainey supposedly created mischief on the Program with other contestants, it identifies only one way in which *Taylor* was damaged:  his claim that he has "been aggrieved and harmed by the announcement of the verdict" against him for allegedly assaulting Rainey.  *Id.* ¶ 52.

## III.    TAYLOR'S CLAIMS ARE SUBJECT TO AN ANTI-SLAPP MOTION.

In *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002), the California Supreme Court outlined the "two-step process for determining whether an action" must be stricken under the anti-SLAPP statute.  "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity."  *Id.*  To make this showing, the defendant must demonstrate that the alleged conduct "underlying the plaintiff's cause [of action] fits one of the categories spelled out in section 425.16, subdivision (e)."  *Id.*  Those categories include any "conduct [by the defendant] in furtherance of the exercise of the constitutional right . . .  of free speech in connection with a public issue or an issue of public interest."  C.C.P. § 425.16(e)(4).  If the claim arises from conduct falling within one of these categories, the court "must then determine whether the plaintiff

has demonstrated a probability of prevailing." *Navellier*, 29 Cal. 4th at 88. If the plaintiff cannot meet this burden, his claim must be stricken. *Id.*

**A.    Taylor's Claims Arise From Viacom's Conduct in Furtherance of Its First Amendment Rights.**

Courts have recognized that a defendant's activities related to the production of a television program – including casting and hiring decisions – constitute acts in furtherance of free speech within the meaning of the anti-SLAPP statute. In *Hunter*, the court held that a television station's selection of "who was to report the news" was a "form of protected activity" that "helped advance or assist" its free-speech rights. 221 Cal. App. 4th at 1521. Thus, the court applied the anti-SLAPP statute to the plaintiff's discrimination claim based on the defendant-television station's decision not to hire him as a weather news anchor, rejecting the plaintiff's argument that the station's conduct was merely an "employment" decision, not an act in furtherance of free-speech rights. *Id.* The court explained that:

> [i]n assessing whether a cause of action arises from protected activity, we disregard the labeling of the claim [] and instead examine the *principal thrust, or gravamen* of a plaintiff's cause of action … We assess the principal thrust by identifying the allegedly wrongful and injury-producing conduct . . . that provides the foundation for the claim. [] … The critical point is whether the plaintiff's cause of action itself was based on an act in furtherance of the defendant's right of petition or free speech.

*Id.* at 1520 (emphasis in original); (citations omitted).[2]

Similarly, the court in *Tamkin* held that the plaintiffs' claims were subject to an anti-SLAPP motion because they targeted "the defendants' acts [that] helped to advance or assist in the creation, *casting*, and broadcasting of an episode of a popular television show." 193 Cal. App. 4th at 142-143 (emphasis added). And in *Doe v.*

---

[2] *See also Seelig v. Infinity Broadcasting*, 97 Cal. App. 4th 798, 806, 812 (2002) (directing trial court to grant anti-SLAPP motion as to claims including negligent hiring, retention, and supervision of employees); *Daniel v. Wayans*, 8 Cal. App. 5th 367, 391-392 (2017), review granted by *Daniel v. Wayans*, 2017 Cal. LEXIS 3324 (May 10, 2017), (applying SLAPP statute to hostile-work-environment claim in the context of the motion-picture industry).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Gangland Prods*, 730 F.3d 946, 953 (9th Cir. 2013), the court agreed that the anti-SLAPP statute applied to claims arising from a television production company's "pre-production acts."[3]

These authorities make sense.  Because the production of television programs involves the exercise of First Amendment rights (*see, e.g., Tamkin*, 193 Cal. App. 4th at 143-144), and because casting is an integral part of the creation of a television program – one prominent television show runner called casting "the most important thing in television production"[4] – decisions about casting unquestionably are acts *in furtherance of* First Amendment rights.  *See Lieberman v. KCOP Television*, 110 Cal. App. 4th 156, 166 (2003) ("conduct" within the meaning of the SLAPP statute "is not limited to the exercise of [the] right of free speech, but to *all conduct in furtherance of the exercise of the right of free speech*") (emphasis added).

Here, each of Plaintiff's claims arises directly from his allegation that Viacom "authorized [Rainey's] participation," "permitted [her] to participate," or "allow[ed] Rainey to participate" in the Program.  Compl. ¶¶ 56, 64, 73, 89.  As *Hunter*, *Tamkin*, and these other cases demonstrate, those casting decisions are acts in furtherance of free-speech rights under Section 425.16.

### B.    Viacom's Conduct Relates to a Matter of Public Interest.

The public-interest requirement, "like all of section 425.16, is to be construed broadly."  *Seelig*, 97 Cal. App. 4th at 808.  Matters of public interest are not limited to traditional news reports; instead, "[t]he definition of 'public interest' within the meaning of [Section 425.16] has been broadly construed to include not only

---

[3] In other contexts, courts also have recognized that entertainment-industry casting and hiring decisions implicate First Amendment rights.  *See Claybrooks v. ABC*, 898 F. Supp. 2d 986, 999 (M.D. Tenn. 2012) (barring class-action lawsuit for employment decision in casting *The Bachelor*); *Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 297 (2006) (Chin, J., concurring) (recognizing First Amendment threat posed by employment-discrimination claim targeting hiring decisions on television sitcom).

[4] Ex. I.

8

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

governmental matters, but also private conduct that impacts a broad segment of society." *Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 479 (2000). Put simply, an issue of public interest "is any issue in which the public is interested[.]" *Nygård v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008). "In other words, the issue need not be 'significant' to be protected by the anti-SLAPP statute – it is enough that it is one in which the public takes an interest." *Id.*

As the California Court of Appeal recently observed, "case precedent confirms that there is a public interest 'in the writing, *casting* and broadcasting' of an episode of a popular television program." *Brodeur v. Atlas Entertainment*, 248 Cal. App. 4th 665, 675 (2016) (emphasis added), (quoting *Tamkin*, 193 Cal. App. 4th at 144). Because Taylor's claims arise from decisions regarding the casting of a popular unscripted television program (Compl. ¶¶ 56, 64, 73, 89), Viacom satisfies the public-interest requirement under Section 425.16 for this reason alone.

Courts interpreting the anti-SLAPP statute also have recognized the strong public interest in the lives of individuals ranging from Paris Hilton (*Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (2010)) and David Beckham (*Beckham v. Bauer Publishing*, No. CV 10-7980-R, 2011 U.S. Dist. LEXIS 32269, at *2 (C.D. Cal. Mar. 17, 2011)) to a Finnish businessman (*Nygård*, 159 Cal. App. 4th at 1042-1043) and the leaders of a cat-fancying organization (*Traditional Cat Ass'n v. Gilbreath*, 118 Cal. App. 3d 392, 400-301 (2004)). Courts likewise have recognized the public's keen interest in reality television programs. Consider *Seelig*, for example, where the court held that *Who Wants to Marry a Multi-Millionaire?*, another unscripted television program in which women competed for the romantic attention of a wealthy man, was an issue of public interest under Section 425.16. 97 Cal. App. 4th at 800, 807-808 (describing "reality television" as one of "the more popular cultural phenomena of the new century"). And in *Arenas v. Shed Media*, 881 F. Supp. 2d 1181, 1192 (C.D. Cal. 2011), the court held that *Basketball Wives*, an unscripted television program about the wives and girlfriends of NBA players, which, like the

9

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Program, airs on VH1, concerned an issue of public interest for purposes of the anti-SLAPP statute. *Id.*

These authorities confirm that Taylor, his dating life, and the Program all qualify as issues of public interest under Section 425.16.  Indeed, Taylor has actively placed himself in the public eye, describing himself as an "internationally-recognized music artist" (Compl. ¶ 2), is "no stranger to the media and … puts himself in the public spotlight." *Beckham*, 2011 U.S. Dist. LEXIS 32269, at *2.  Taylor has had eight No. 1 albums on the Billboard R&B/Hip-Hop Albums Chart, tying him for third of all time, behind Nas and Jay-Z.  Ex. J.  He has 8.2 million followers on Instagram, 7.5 million followers on Facebook, and 1.2 million followers on Twitter.  Exs. K, L, M.

Before the Program entered production, Taylor was the star of three seasons of *Marrying the Game*, an unscripted series that followed him and his fiancé as they prepared for their wedding.  Ex. G.  After *Marrying the Game* ended due to their break-up, he made his dating life a prominent part of his music, boasting on one song that he had sexual relations with three of the Kardashian sisters.  Exs. N-O.  Through his own conduct, Taylor's dating life is a subject of intense public interest; a Google search for "The Game" and "girlfriend" nets 25 million results; there are many entertainment news items about Taylor and various paramours.  Exs. P-W.  The Program itself also attracted broad public interest, generating 773,412 followers on Facebook, numerous recaps and articles, as well as good ratings.[5]  Exs. X-PP.  Accordingly, there can be little doubt that the casting of the Program is connected to several issues of public interest.

---

[5] The Program was among the top programs on Monday nights in basic cable, debuting with 1.9 million viewers in the 18-49 demographic, and garnering similar ratings throughout its run.  Segal Decl. Exs. DD - LL.

10

SPECIAL MOTION TO STRIKE

4817-4804-4106v.4 0098567-000013

## IV.   TAYLOR CANNOT SHOW A PROBABILITY OF PREVAILING ON HIS CLAIMS.

Because Viacom has made its threshold showing under Section 425.16 that Taylor's claims arise from Viacom's acts in furtherance of its free-speech rights concerning an issue of public interest, the burden shifts to Taylor to demonstrate a probability that he will prevail on each of his claims. C.C.P. § 425.16(b)(1). As the court explained in *DuPont Merck Pharm. v. Superior Court*, 78 Cal. App. 4th 562, 568 (2000), "to satisfy its burden under the second prong of the anti-SLAPP statute, it is not sufficient that plaintiffs' complaint survive a demurrer" or motion to dismiss. Instead, the plaintiff must present "competent evidence" showing that he will "probably prevail at trial." *Bradbury v. Superior Court*, 49 Cal. App. 4th 1108, 1117 (1996). Taylor cannot come close to meeting that burden.

### A.   Viacom Did Not Proximately Cause the Damages Alleged in Taylor's Complaint.

The gist of Taylor's complaint is that he was "aggrieved and harmed by the announcement of the verdict" against him awarding Rainey $7.1 million. Compl. ¶¶ 49, 52. Proximate cause is a requirement of each one of Taylor's claims. *See Evan F. v. Hughson United Methodist Church*, 8 Cal. App. 4th 828, 835 (1992) (negligent hiring); *Brandwein v. Butler*, 218 Cal. App. 4th 1485, 1520 (2013) (holding that NIED does not exist as a tort independent of negligence, and that "recovery of emotional distress damages is premised on defendant's negligence (i.e., breach of a duty) that proximately causes emotional distress"); *M.B. v. City of San Diego*, 233 Cal. App. 3d 699, 708 (1991) (negligent misrepresentation); and *Tribeca Companies, LLC v. First American Title Ins. Co.*, 239 Cal. App. 4th 1088, 1114 (2015), citing *Gutierrez v. Girardi*, 194 Cal. App. 4th 925, 932  (2011) (breach of fiduciary duty). But Viacom did not proximately cause the verdict or any financial or emotional harm that Taylor suffered, and thus cannot be liable for any of the claims alleged in the complaint.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

The proximate-cause analysis asks:  "should the defendant be held responsible for negligently causing the plaintiff's injury?"  *Evan F.*, 8 Cal. App. 4th at 835.  "This limitation is to some extent associated with the nature and degree of the connection in fact between the defendant's acts and the events of which the plaintiff complains," and "legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability."  *Id.*  "Where, subsequent to the defendant's negligent act, an independent intervening force actively operates to produce the injury, the chain of causation may be broken."  *Brewer v. Teano*, 40 Cal. App. 4th 1024, 1032-1033 (1995).

Numerous California cases delineate the boundaries of proximate cause, showing that the chain of causation will be broken by even one intervening act.  In *Evan F.*, the plaintiff claimed that a church was liable for negligently hiring a pastor, who molested her brother, who in turn molested her.  8 Cal. App. 4th at 836-37.  Noting that "[i]n the past, courts were reluctant to impose civil liability when a single criminal act had intervened," the court declined to impose liability where there were two intervening acts breaking the chain of causation.  *Id.* at 838.

*Brewer* also is instructive.  There, the plaintiff's car was hit several times by the defendant, and plaintiff, in fear, left the scene of the accident. 40 Cal. App. 4th at 1028.  Witnesses reported that he left the scene, and he was prosecuted and tried for hit-and-run.  *Id.* at 1027.  The plaintiff later sued the defendant's estate for injuries sustained in the accident, as well as for emotional distress and expenses incurred from the felony prosecution against him.  *Id.*  The court held that although the plaintiff was entitled to damages related to the car accident, the defendant's reckless driving was not a proximate cause of the prosecution.  *Id.* at 1035-36.  Reaching this conclusion, the court laid out the numerous steps that broke the chain of causation:

> The criminal prosecution in this case was not an immediate reaction to an on-the-scene situation, but the product of what, we must assume, was the considered and careful

12

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

judgment of a number of persons. First, a prosecutor had to review the information presented and available and decide to file a formal criminal complaint. After that, the prosecution had to present enough evidence to convince a magistrate, or a grand jury, that the crime of felony hit-and-run had been committed by plaintiff. The resulting indictment or information then had to be filed in superior court.  It was subject to testing by a motion to dismiss for insufficiency of evidence and, most important, by the trial itself.

*Id.* at 1036.  The court held that the harm that befell the plaintiff was a different kind of harm than what reasonably could be expected to result from a car accident.  *Id.* Because the harm was the result of "remote official acts of independent public officers," the defendant was not liable for them.  *Id.* at 1037.  *See also Williams v. Wraxall*, 33 Cal. App. 4th 120, 137 (1995) (holding that where there is no evidence showing that defendant's allegedly tortious conduct was "a substantial factor in causing [plaintiff's] conviction," there is no causation).

In the negligent-hiring context, courts examining proximate cause have analyzed whether the intervening acts were committed in the scope of employment, and whether they were the type of acts an employer would expect an employee to commit.  Where acts are too remote from the employee's official duties, courts have refused to find that the employer proximately caused the damage resulting from those acts.  For example, in *Phillips v. TLC Plumbing*, 172 Cal. App. 4th 1133, 1145-1146 (2009), the plaintiff's estate sought to hold the defendant liable for the death of her mother at the hands of defendant's former employee, a plumber.  Two years before the shooting, the decedent and the plumber met while he was on a service call and began dating.  *Id.* at 1136-1137.  The defendant fired the plumber the next month for using drugs and alcohol and for threatening another employee.  *Id.*  Two years passed, the decedent and the plumber became estranged, and the plumber shot and killed her.  *Id.*  The plaintiff alleged that the defendant was negligent for hiring the plumber with the knowledge that he was on parole after a conviction for domestic violence and arson involving his wife.  *Id.* at 1136.  Although the decedent and the

SPECIAL MOTION TO STRIKE

4817-4804-4106v.4 0098567-000013

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  plumber would not have met but for his employment with the defendant-plumbing

2  business, the court held that the events were much too attenuated to hold the

3  defendant liable for the actions of the plumber.  *Id.* at 1146-47.

4         Taylor's claimed damages in this case are far more remote from Viacom's

5  allegedly tortious conduct.  The alleged decision to cast Rainey was not a substantial

6  cause of Rainey's judgment against Taylor.  Instead, the judgment was the result of

7  countless intervening actions – most importantly, Taylor's alleged sexual assault of

8  Rainey.  Whatever Rainey's past may have included, it did not make foreseeable or

9  justify Taylor's battery of her at the nightclub.  Rainey's filing of her lawsuit against

10  Taylor, her presentation of evidence to the jury, his failure to appear at trial, the

11  court's decision to proceed with trial in Mr. Taylor's absence, and the jury's act of

12  finding Taylor liable all are subsequent intervening causes of Taylor's alleged harm.

13  Under these circumstances, Taylor cannot demonstrate the required probability of

14  establishing that Viacom proximately caused his injury, and each of his claims

15  should be stricken.

16       **B.**    **Taylor's Claims Are Barred by His Release, Covenant Not to Sue,**

17            **and Assumption of Risk Related to the Program.**

18         California law recognizes that a "written release may exculpate a tortfeasor

19  from future negligence or misconduct."  *Benedek v. PLC Santa Monica,* 104 Cal.

20  App. 4th 1351, 1356 (2002) (quotations omitted).  An "express assumption of risk

21  goes further, more clearly authorizing" the allegedly tortious conduct.  *Coates v.*

22  *Newhall Land & Farming*, 191 Cal. App. 3d 1, 7-8 (1987).  California courts have

23  not hesitated to enforce these provisions in entertainment-related contracts.  *See, e.g.,*

24  *Christakis v. Mark Burnett Prods*., No. 08-cv-6864, 2009 U.S. Dist. LEXIS 60751, at

25  *9-*10 (C.D. Cal. Apr. 27, 2009); *Spinello v. Amblin Entertainment*, 29 Cal. App.

26  4th 1390, 1398 (1994).

27         It is black-letter law that "[b]y contract, a person may expressly agree to

28  assume the risk of another person's negligence, and the agreement is valid unless it

14

SPECIAL MOTION TO STRIKE

4817-4804-4106v.4 0098567-000013

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

contravenes public policy."  9 Witkin Sum. Cal. Law Torts § 1292.  Thus, "[b]y an express assumption of risk, the potential plaintiff agrees not to expect the potential defendant to act carefully, thus eliminating the potential defendant's duty of care, and acknowledging the possibility of negligent wrongdoing."  *Coates*, 191 Cal. App. 3d at 7-8.  For example, in *Sanchez v. Bally's Total Fitness*, 68 Cal. App. 4th 62, 68-69 (1998), the plaintiff's agreement that she undertook the use of a fitness center at her "sole risk," and that the fitness center would not be liable for "any claims" was held to include claims for negligence, even if negligence was not explicitly mentioned: "While it is true that the express terms of any release agreement must be applicable to the particular misconduct of the defendant that does not mean that every possible specific act of negligence of the defendant must be spelled out in the agreement or even discussed by the parties*." Id. See also Madison v. Superior Court*, 203 Cal. App. 3d 589, 594 (1988) (same; dismissing wrongful-death claim arising from SCUBA class).

On February 27, 2015, Taylor, through his loan-out corporation Cali Dream Films, LLC, entered into an agreement to furnish services as "an on-camera performer and executive producer[] in connection with … 'She Got Game'".  Ex. A, Loanout Agreement, ¶ 2.  Paragraph 18 of the accompanying Deal Memorandum states:

> 18. <u>ARTIST ACKNOWLEDGEMENT</u>: *Artist acknowledges and understands that Artist's participation in the Project may lead to emotional strains and pressures before, during and after Artist's participation in the Project. . . . Artist further understands that Artist's appearance, depiction and/or portrayal in the Project, and Artist's actions and the actions of others displayed in the Project, may be disparaging, defamatory, embarrassing or of an otherwise unfavorable nature and may expose Artist, Artist's friends, co-workers and/or family to public ridicule, humiliation or condemnation. . . . Artist is voluntarily participating in the Project and related activities with full knowledge, appreciation and understanding of the personal risks involved and hereby agrees to accept any and all risks of participating in the Project.*

*Id.* Deal Memorandum, ¶ 18 (emphasis added).  Given the breadth of his assumption of the risk of participating in the Program – and his extensive prior experience in

SPECIAL MOTION TO STRIKE

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

4817-4804-4106v.4 0098567-000013

reality television – Taylor cannot maintain a claim against Viacom for subjecting him to interactions with Rainey.  Controversial personalities are a staple of reality television, and Taylor expressly assumed that risk in connection with the Program.

In the Agreement, Taylor also released Viacom from a broad range of claims:

> 26. <u>APPEARANCE RELEASE/PRIVACY</u>: . . . *Artist hereby agrees not to sue and irrevocably and unconditionally releases, waives and forever discharges Company, VMN, its parent and related companies. . . from any and all manner of liabilities, claims and demands of any kind or nature*, whatsoever, in law or equity, whether known or unknown, suspected or unsuspected, and whether or not concealed or hidden, that Artist may now have or may hereafter have (including, but not limited to, for libel, slander, defamation, invasion of any rights of privacy, right of publicity or personality, intentional infliction of emotional distress, negligent infliction of emotional distress, infringement of copyright or violation of any other right), which arise out of or relate to the use of the Footage in connection with the production, reproduction, exhibition, broadcast, distribution, advertising, promotion or other exploitation of the Series which Artist (or Artist's assigns, agents and/or representatives) ever had, now has, or in the future may have against the Releasees.  For clarity, the foregoing release does not apply to Company's breaches of this Agreement (including, without limitation. Company's intentional defamation of Artist), any intentional bodily harm or property damage caused by Company or any of its agents, employees or invitees, or intentional, reckless or grossly negligent tortious acts committed by Company or any of its agents, employees or invitees.

*Id.* ¶ 26. (emphasis added).

Releases like the one in Taylor's contract serve to extinguish the obligations covered by their terms.  *See, e.g., Marder v. Lopez*, 450 F.3d 445, 449 (9th Cir. 2006).  In *Marder*, a dancer whose life story was the basis for the movie *Flashdance* sued Jennifer Lopez, Sony Music, and others for a variety of claims based on the defendants' reenactment of scenes from the movie in Lopez's 2003 music video for the song, "I'm Glad."  *Id.* at 447.  Applying California law, the Ninth Circuit granted the defendants' motion to dismiss based on a release signed by the plaintiff that discharged the defendants "from each and every claim" "arising out of or in any way connected with, either directly or indirectly, any and all arrangements in connection with the preparation of screenplay material and the production, filming and exploitation of 'Flashdance.'"  *Id.* at 449, 453.

16

SPECIAL MOTION TO STRIKE

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Similarly, in *Jefferson v. Cal. Dep't of Youth Auth.*, 28 Cal. 4th 299, 310 (2002), the California Supreme Court held that an employee's release discharging "all claims and causes of action" against the employer arising from a workplace injury barred all civil claims against the employer. *See also Tarpy v. County of San Diego*, 110 Cal. App. 4th 267, 272 (2003) (release waiving "any and all claims, cost liabilities, expenses, or judgments" arising from surgery on dog barred all claims against the veterinary defendants following the dog's death); *Edwards v. Comstock Inc.*, 205 Cal. App. 3d 1164, 1167, 1169 (1988) (release discharging respondents from "any and all claims, demands, and actions and causes of action" "unambiguously relinquish[ed] [plaintiff's] right to pursue all claims, actions and causes of action" arising from an auto accident).

The release in the Agreement provides yet another barrier to Taylor's claims, which arise from his alleged sexual assault of Rainey during the production of the Program.

## C. Taylor's Claim for Negligent Misrepresentation Fails For Two Additional Reasons.

Federal Rule of Civil Procedure 9(b) states that a plaintiff "alleging fraud or mistake … must state with particularity the circumstances constituting fraud or mistake." "Rule 9(b) governs pleading of negligent misrepresentation claims sounding in fraud." *Hutchins v. Nationstar Mortgage*, No. 16-cv-7067-PJH, 2017 U.S. Dist. LEXIS 73026, 8-9 (N.D. Cal. May 12, 2017). The tort of negligent misrepresentation requires the same elements as a typical fraud claim, with the exception of intent to defraud. *Oushana v. Lowe's Home Ctrs.*, No. 1:16-cv-01782, 2017 U.S. Dist. LEXIS 86042 (E.D. Cal. June 5, 2017). Those elements are:  (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) justifiable reliance; and (d) resulting damage. Rule 9(b) requires a party to include the "who, what, when, where, and how" of the misconduct charged. *Ebeid v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010).

17

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Taylor's negligent-misrepresentation claim fails to meet this exacting standard. He names three defendants, but fails to identify who made the alleged misrepresentation that "all of the Show's contestants were fit and suitable for participation on the Show."  Nor does he identify when the alleged misrepresentation was made, or where it was made.  In the absence of the "who," the "when," and the "where," he cannot state a claim for negligent-misrepresentation.

This claim also fails because his reliance on any such representation, if made, was not reasonable in light of his experience as an unscripted television star and his explicit assumption of the risk associated with this type of production.  With faux-naiveté, Taylor alleges on information and belief that Viacom's purported approval of Rainey's casting resulted in the presence of "an unpredictable wild card" whose "volatile behavior would arouse intrigue and generate interest in the Show[.]" Compl. ¶¶ 65-66.  Having been on three seasons of an unscripted series and doubtlessly having observed other similar fare, Taylor cannot feign surprise that producers would cast a show with the object of creating dramatic situations to garner viewers' interest.  Indeed, Taylor himself acknowledged that his own participation in the Program would "lead to emotional strains and pressures before, during and after [his] participation," and agreed that he would "accept any and all risks of participating in the Project." Ex. A, Deal Memorandum, ¶ 18.  In light of these facts, his reliance on any purported representation regarding other cast members' fitness for the show is unreasonable.

**D.    Taylor's Claim for Negligent Infliction of Emotional Distress Fails Because No Physical Injury Is Alleged.**

Under California law, negligent infliction of emotional distress is generally actionable only if it involves a threat of physical harm or proximity to physical harm. "With rare exceptions, a breach of the duty must threaten physical injury, not simply damage to property or financial interests." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 985 (1993).  Taylor's complaint alleges no physical injury, and no

18

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

threat of physical injury.  It alleges only emotional and financial harm.  The claim for

negligent infliction of emotional distress fails for this additional reason.

> **E.     Taylor's Claim for Breach of Fiduciary Duty Is Barred Because Viacom Did Not Owe Him a Fiduciary Duty.**

Taylor cannot show a probability of prevailing on his claim for breach of

fiduciary duty because there was no fiduciary relationship between him and Viacom.

A fiduciary relationship is "any relation existing between parties to a transaction

wherein one of the parties is in duty bound to act with the utmost good faith for the

benefit of the other party."  *Wolf v. Superior Court*, 107 Cal. App. 4th 25, 29 (2003).

"Traditional examples of fiduciary relationships in the commercial context include

trustee/beneficiary, directors and majority shareholders of a corporation, business

partners, joint adventurers, and agent/principal."  *Id.*  Thus, in *Wolf*, where the

complaint was "devoid of allegations showing an agency, trust, joint venture,

partnership or other 'traditionally recognized' fiduciary relationship," the court held

no fiduciary relationship existed, and upheld a demurrer to a plaintiff's complaint for

breach of fiduciary duty.  *Id.* at 28-30.  In doing so, the court rejected claims that a

contract for sale of a book to a motion-picture studio created such a duty, despite the

fact that it provided for an accounting and future revenue streams.  *Id.*

In this case, Taylor fails to allege anything beyond a boilerplate assertion that

Viacom was his "de facto" agent or partner.  Compl. ¶ 84.  His conclusory allegation

is insufficient to establish a fiduciary relationship, and is squarely contradicted by the

Agreement, in which the parties acknowledged that they were "independent

contractors," and that "no partnership or joint venture or other association shall be

deemed created by this agreement."  Ex. A., ¶ 4.  Consequently, Taylor cannot

possibly maintain a claim for breach of fiduciary duty.

> **V.     CONCLUSION**

Taylor was sued by Rainey for alleged battery, failed to show up for trial, and

was found to be liable by a jury for $7.1 million.  He now seeks to hold Viacom

19

responsible for that chain of events, all because Rainey was a participant in the Program.  His claims are frivolous, and he cannot show any possibility – let alone the required probability – of success on any of them. Viacom, therefore, respectfully requests that the Court grant this motion and strike Taylor's complaint in its entirety.

DATED: June 26, 2017                    DAVIS WRIGHT TREMAINE LLP
                                        ALONZO WICKERS IV
                                        JONATHAN L. SEGAL

                                        By: /s/ Alonzo Wickers IV

                                        Attorneys for Defendants
                                        VIACOM INC., VIACOM
                                        INTERNATIONAL INC., and NEW
                                        POP CULTURE PRODUCTIONS INC.

20

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899